[No. 7583–7–I.   Division One.   April 21, 1980.]

CARL MANZANARES, *Respondent,* v. PLAYHOUSE
CORPORATION, *Appellant.*

*Michael Mines* and *Betts, Patterson & Mines,* for appellant.

*L. W. Kahn* and *Mathew D. Griffin, Inc., P.S.,* for respondent.

RINGOLD, J.—This is an action for personal injuries sustained by Carl Manzanares while a patron at the Playhouse Tavern. Playhouse appeals from a $25,000 judgment entered in favor of Manzanares. The appeal challenges the sufficiency of the evidence, the excessiveness of the verdict and the submission of certain instructions to the jury. We reverse because of error in the submission of two instructions to the jury.

On the evening of July 29, 1976, Manzanares was part of a group celebrating the impending marriage of a mutual friend. After dinner and drinks they went to the Playhouse Tavern to observe "topless" dancing. Manzanares arrived late and was standing against a wall. At a table next to the bachelor party, the manager or bouncer named "Junior" was drinking beer with several other patrons.

The "topless" dancer put on her blouse and approached the table where Manzanares' friends were sitting. She offered to do a table dance.[1] The offer was refused and she was referred to Manzanares, who was still standing against the wall.

Manzanares refused to pay for a table dance. Something he said insulted or upset the dancer. Junior approached, had a few words with Manzanares and then returned to his table. Manzanares and his friends decided to leave. At this point the dancer yelled to Junior and his table that, "He

---

[1] There was testimony from a regular patron that the table dance was a "topless" dance performed very close to the paying patron at his table. There was, however, no evidence of any topless table dancing being offered or occurring that evening.

slapped me," referring to Manzanares. There is no evidence that Manzanares had touched the dancer.

Accompanied by one of the patrons sitting with him, Junior again approached Manzanares. A heated discussion ensued. The man with Junior was pointing and gesturing towards Manzanares and suddenly knocked him out with one punch; then stomped Manzanares twice on the head with his foot while other patrons from Junior's table came and kicked Manzanares in the body. Junior made no effort to stop the assault but instead used mace on Manzanares' friends who were trying to come to his aid.

Manzanares did not regain consciousness until he awoke in the hospital where he spent 5 days. Surgery was performed for facial fractures. In addition to pain he experienced problems with his balance. He could not work until the latter part of November and at the time of trial still had a lack of feeling in part of his face.

The trial court instructed on the basic standard of care of a tavern keeper.

### Instruction No. 7
It is the duty of a tavern keeper personally, or through his delegated employees, to exercise reasonable care and vigilance to protect his patrons from reasonably foreseeable injury at the hands of other patrons.

The trial court also instructed as to negligence *per se* based upon WAC 314–16–125(6):

### Instruction No. 8
A regulation of the Washington State Liquor Board states that:
(. . . . it is prohibited) to permit entertainers whose breast and/or buttocks are exposed to view, to perform elsewhere on the licensed premeses, except upon a stage at lease 18 inches above the immediate floor level and removed at least 6 feet from the nearest patron.

### Instruction No. 9
The violation, if you find any, of a statute, ordinance or regulation is negligence as a matter of law. Such negligence has the same effect as any other act of negligence. It will not render defendant liable for damages unless

you further find that such negligence was a proximate cause of the claimed injury.

The jury returned a verdict of $25,000.

SUFFICIENCY OF THE EVIDENCE

■ Playhouse challenges the trial court's denial of its motion for directed verdict and judgment notwithstanding the verdict on the ground that the evidence was insufficient to take to the jury the question of whether Playhouse was negligent. A challenge to the sufficiency of the evidence in the form of either motion admits the truth of the nonmoving party's evidence and all reasonable inferences which can be drawn therefrom. *Jeffries v. Clark's Restaurant Enterprises, Inc.*, 20 Wn. App. 428, 580 P.2d 1103 (1978); *Moyer v. Clark*, 75 Wn.2d 800, 454 P.2d 374 (1969). Such motions will be granted only where it can be held as a matter of law that there is no competent evidence or inferences to be drawn which would sustain a jury verdict in favor of the nonmoving party. *Jeffries v. Clark Restaurant Enterprises, Inc., supra; Shelby v. Keck*, 85 Wn.2d 911, 541 P.2d 365 (1975).

■ A tavern keeper, though not an insurer of the safety of his patrons, owes them the duty to exercise reasonable care and vigilance to protect them from reasonably foreseeable injury, mistreatment or annoyance at the hands of other patrons. *Potter v. Madison Tavern*, 74 Wn.2d 704, 446 P.2d 320 (1968); *Waldron v. Hammond,* 71 Wn.2d 361, 428 P.2d 589 (1967). Here there was evidence of a dispute between Manzanares' party and the table where Junior and the assailant sat. There was a separate dispute between the go–go dancer and Manzanares. The situation was such that Junior had asked Manzanares and his party to leave, and they had agreed to leave. Junior was drinking beer with the assailant when the dancer yelled, "He slapped me." Junior then approached Manzanares with the assailant. Under these circumstances the trier of fact could reasonably conclude that Junior should have foreseen the possibility of

violence. In permitting the assailant to join the heated discussion the jury could have concluded that Junior was not exercising reasonable care and vigilance and that this negligence was the proximate cause of Manzanares' injuries.

### EXCESSIVENESS OF VERDICT

Playhouse next argues that the medicals of $1,300 and the meager evidence of lost wages did not justify a verdict of $25,000 and that the verdict must have been the result of the prejudicial testimony and closing argument.

■ A jury verdict is presumed to be correct unless the award is so excessive or inadequate as to unmistakably indicate it must have been the result of passion or prejudice. *Cox v. Charles Wright Academy, Inc.,* 70 Wn.2d 173, 422 P.2d 515 (1967). Courts must be extremely hesitant to interfere with the jury's verdict. *Johnson v. Marshall Field & Co.,* 78 Wn.2d 609, 478 P.2d 735 (1970); *Ma v. Russell,* 71 Wn.2d 657, 430 P.2d 518 (1967). The rule applicable here was restated in *Hogenson v. Service Armament Co.,* 77 Wn.2d 209, 218, 461 P.2d 311 (1969).

> Since there was no significant evidence indicating that passion and prejudice played any part in the jury's determination, the test to be used is the conscience of the appellate court.

Considering the severity of the beating, the facial fractures and subsequent surgery, the long period of recuperation, the pain and continuing loss of feeling, we have no problem stating that the jury's verdict was within reason. Certainly "we are not shocked by the amount of the verdict." *Johnson v. Marshall Field & Co., supra.* There is no evidence that the verdict is the result of passion or prejudice.

### PROPRIETY OF INSTRUCTIONS

Playhouse argues that the evidence did not support the instructions given. It contends that instruction No. 7 is too broad and should have been narrowed to relate only to the assault which occurred after the first blow could have been foreseen.

Instruction No. 7 was a correct statement of the law. *Potter v. Madison Tavern, supra.* Playhouse requested an instruction that would have limited the jury to considering its negligence only after the initial blow was struck. Because the evidence justified the jury in concluding that Playhouse was negligent in not protecting Manzanares from the first punch, the instruction, as given, was proper.

Playhouse contends that instructions Nos. 8 and 9, which dealt with WAC 314-16-125(6) (topless table dancing), were improper as there was no evidence that there was any topless table dancing offered or performed on the night in question.

■ "It is axiomatic that prejudicial error occurs where the jury is instructed on an issue that lacks substantial evidence to support it." *Haynes v. Moore,* 14 Wn. App. 668, 672, 545 P.2d 28 (1975). Instruction No. 8 informed the jury that a WAC regulation prohibited topless table dancing. Instruction No. 9 informed the jury that a violation of a regulation was negligence as a matter of law. While these two instructions were correct statements of law, the evidence did not warrant giving them. There was no evidence that there had been a violation of the regulation on the evening in question. Neither was there evidence that the dancer involved offered to do an illegal table dance or had ever previously done a topless table dance. The sole evidence was one witness' testimony that he had observed topless table dancing in the past. This was patently insufficient to allow the jury to conclude that there had been a violation of the regulation which was the proximate cause of Manzanares' injuries.

Manzanares contends that evidence of previous habitual violation justified the giving of instruction No. 8. One of the purposes of the WAC regulation was to reduce the number of assaults taking place on or near premises where topless table dancing was occurring. *Bolser v. State Liquor Control Bd.,* 90 Wn.2d 223, 580 P.2d 629 (1978); *Anderson, Leech & Morse, Inc. v. State Liquor Control Bd.,* 89 Wn.2d 688, 575

P.2d 221 (1978). Manzanares concedes, however, that violation of this regulation was not the proximate cause of the assault. He argues that the jury should have been allowed to consider Playhouse's habitual violation of the regulation on the issue of whether it was foreseeable that the assault was likely to occur. While the giving of instruction No. 8 alone may not have been reversible error, together with instruction No. 9, the complained–of instructions submitted to the jury an issue not supported by the evidence. The judgment must be reversed and remanded for new trial under proper instructions.

Reversed.

CALLOW, C.J., and JAMES, J., concur.