[No. 15130-4-I.   Division One.   October 6, 1986.]

WILLIAM E. GRADER, *Respondent,* v. THE CITY
OF LYNNWOOD, *Appellant.*

*Patrick M. Curran* and *Riach, Gese, Seather, Watts & Curran,* for appellant.

*James E. Deno* and *Cogdill, Deno, Millikan & Carter,* for respondent.

PEKELIS, J.—The City of Lynnwood appeals the trial court's determination that the City's interpretation of Lynnwood Municipal Code (LMC) 20.14.040 is an unconstitutional exercise of the City's police power and violates William E. Grader's right to equal protection. We affirm the trial court's decision on the latter ground.

William E. Grader purchased 11 contiguous platted lots located within the city of Lynnwood in approximately 1962. Lots 12 and 13 of this plat were previously developed as a retail auto parts store and machine shop known as "Bill's

Auto Parts" and lots 24 and 25 as a building and business known as "Stan's Auto Rebuild." Neither development meets existing city codes, but both contain valid nonconforming uses, having been in existence when the current codes were enacted.

In 1982, Grader decided to construct a warehouse and billiard lounge on the remaining contiguous vacant lots. He applied to the City for a permit to construct a development which would be entirely independent of both existing developments. Not only would the new building be constructed on different lots, it would have separate street access and parking facilities and would serve an entirely different purpose.

A conditional use permit was issued by the City on January 10, 1983, but it was conditioned on the abatement of the valid nonconforming uses on Grader's contiguous lots. This would require Grader to alter the size and location of a large sign, landscape the existing developments, paint stripe dividers in their parking areas, and generally comply with current developmental standards, all at substantial expense. The City based its determination on LMC 20.14-.040(c)(2) which provides that when major alterations are permitted on a nonconforming "site," the previously lawful nonconforming structures or uses on that "site" must be brought into compliance with existing code. The parties agree that Grader's proposed development constitutes a "major alteration" as defined in the ordinance and would conform to all existing code requirements. Their disagreement centers on whether the existing businesses and the proposed development constitute a single "site."

LMC 20.14.040 defines "site" as follows:

> "site," for purposes of this chapter, means a lot or contiguous lots under one owner or single association of individuals within the same zone and with established mutual access, circulation and shared parking facilities.

The City's position is that LMC 20.14.040 defines a "site" as a lot or contiguous lots that are either (1) under one owner *or* (2) under a single association of individuals within

the same zone and with established mutual access, circulation and shared parking facilities.

Grader, on the other hand, argues that LMC 20.14.040 must be read as defining "site" as a lot or contiguous lots (1) under one owner or a single association of individuals within the same zone *and* (2) with established mutual access, circulation and shared parking facilities.

Grader appealed the City's determination to the Lynnwood hearing examiner who upheld the City's interpretation of the ordinance. Grader also contended that the City's interpretation would render the ordinance unconstitutional. The hearing examiner declined to resolve the constitutional issues raised, properly finding that these were matters only the courts could address. *Yakima Cy. Clean Air Auth. v. Glascam Builders, Inc.,* 85 Wn.2d 255, 257, 534 P.2d 33 (1975).

After the Lynnwood City Council denied his appeal, Grader applied for a writ of certiorari in the Snohomish County Superior Court challenging the constitutionality of the City's interpretation of the ordinance as applied to his proposed development. He claimed that it was first, violative of Grader's right to equal protection; second, constituted an improper use of the City's police power; and third, was unconstitutionally vague. The court reversed the hearing examiner concluding that the City's interpretation was unconstitutional and adopting Grader's proposed interpretation of the ordinance, thereby avoiding its invalidation. The City has appealed.

■ Pursuant to RCW 7.16.060, the superior court reviews only the administrative record below and takes no new evidence. Therefore, the trial court need enter no findings of fact or conclusions of law. *King Cy. Water Dist. 54 v. King Cy. Boundary Review Bd.,* 87 Wn.2d 536, 544, 554 P.2d 1060 (1976). Although the trial court did enter findings and conclusions herein, this does not in itself constitute grounds for reversal but is mere surplusage. *See Spokane Cy. Fire Protec. Dist. 8 v. Spokane Cy. Boundary Review Bd.,* 27 Wn. App. 491, 493, 618 P.2d 1326 (1980).

The trial court adopted the proper standard of review to resolve the legal issues before it, determining that the administrative action was arbitrary and capricious or contrary to law. *Anderson v. Island Cy.,* 81 Wn.2d 312, 316–17, 501 P.2d 594 (1972). This court reviews the administrative record in rendering its decision and does not rely upon the trial court's findings and conclusions. *Spokane Cy. Fire Protec. Dist. 8,* at 493.

■ We recognize that as the enforcing agency herein, the City's interpretation of the ordinance is entitled to substantial weight. *State ex rel. Pirak v. Schoettler,* 45 Wn.2d 367, 371–72, 274 P.2d 852 (1954). Nevertheless, the ordinance must be interpreted so as to effectuate the objective or intent of the enacting body. *Amburn v. Daly,* 81 Wn.2d 241, 245, 501 P.2d 178 (1972). In addition, ordinances must be interpreted according to the plain and ordinary meaning of the language used. *Boss v. Spokane,* 63 Wn.2d 305, 307, 387 P.2d 67 (1963).

The disputed portion of the ordinance is the definition of a "site." Following the words "lot or contiguous lots" are a series of qualifying phrases which concern, respectively: ownership, zone location, *and* mutuality of facilities. Each of these phrases acts to describe the "lot or contiguous lots" which will constitute a "site" if, and only if, all three sub-descriptions apply. Had the enacting body intended to single out lots under a common owner for disparate treatment, as the City argues, it could readily have done so by reinserting the words "lot or contiguous lots" after the word "or" and before the word "single." *See Dando v. King Cy.,* 75 Wn.2d 598, 603, 452 P.2d 955 (1969).

Furthermore, requiring abatement of nonconforming uses on adjacent but separate developments due solely to common ownership is an inefficient and illogical means of achieving the City's goal of promoting public safety and welfare. The following hypotheticals illustrate the flaw in the City's argument. Were Grader proposing the identical development on property separated by even one lot from his existing developments or were he to sell the pro-

posed building site to a third party, the ordinance would not apply.

In contrast, we believe Grader's interpretation to be a grammatically and pragmatically correct statement of the legislative body's intent. It requires any owner or association of owners, whose property is located within one zone *and* who share access, circulation and parking facilities, to upgrade nonconforming uses on that property as a condition to further development. This interpretation also reasonably effectuates the goal of having an entire *interrelated* development upgraded when a major alteration of any part thereof is undertaken. Thus, the public benefit of the ordinance could not be averted by sale of all or any part of the property as its requirements attach to characteristics of the development, rather than the nature of the ownership.

█ █ Moreover, we recognize that we are obligated to construe the ordinance, if possible, in such a manner as to uphold its constitutionality. *Silver Shores Mobile Home Park, Inc. v. Everett,* 87 Wn.2d 618, 624, 555 P.2d 993 (1976); *Lenci v. Seattle,* 63 Wn.2d 664, 667–68, 388 P.2d 926 (1964). Grader contends that the City's interpretation is not only illogical and unlikely, but unconstitutional. In analyzing whether an ordinance violates equal protection, the minimum scrutiny test is used where neither fundamental rights nor suspect classification is at issue. This test is satisfied if (1) the legislation treats all members within the designated class alike, (2) there are reasonable grounds to distinguish between those within and those outside the class, and (3) the classification has a rational relationship to the purpose of the enactment. *Paulson v. County of Pierce,* 99 Wn.2d 645, 652–53, 664 P.2d 1202, *appeal dismissed,* 464 U.S. 957 (1983).

The City's interpretation fails the second prong of the minimum scrutiny test. The City concedes that the class created by its interpretation is only those persons who own contiguous parcels, one of which is the situs of a nonconforming use and the other, the subject of a proposed major alteration. The City has failed to present any reasonable

argument for distinguishing this class from other property owners. We note that a single association of individuals, unlike single owners, would be required to abate nonconforming uses on adjoining property only when the properties had "established mutual access, circulation and shared parking facilities." Similarly, common owners of noncontiguous lots would not be required to abate nonconforming uses on one to proceed with development on another.

Furthermore, the third prong of the minimum scrutiny test is not met by the City. The election to develop one parcel of property owned by an individual is not rationally related to the municipality's legitimate interest in an otherwise entirely distinct development simply because it is contiguous and owned by that same individual. As noted earlier, the owner can avoid the very real economic penalty of the ordinance by selling the undeveloped property, leaving the new owner free of the expense of abating nonconforming use.

Grader's construction of the ordinance, on the other hand, is not only sensible, but creates no constitutional infirmity. Thus, the ordinance can be properly upheld by adopting this interpretation. In light of this determination, we need not address Grader's police power or vagueness arguments. *Johnson v. Morris,* 87 Wn.2d 922, 931, 557 P.2d 1299 (1976); *Hall v. American Nat'l Plastics, Inc.,* 73 Wn.2d 203, 205, 437 P.2d 693 (1968).

Affirmed.

SWANSON and WEBSTER, JJ., concur.