[No. 20601-0-I. Division One. February 13, 1989.]

WILLIAM E. GRADER, *Respondent*, v. THE CITY OF LYNNWOOD, *Appellant*.

432

WILLIAMS, J. Pro Tem., concurs by separate opinion.

*Roland Hofstedt, Nancy McCoid,* and *Merrick, Hofstedt & Lindsey,* for appellant.

*James Deno* and *Cogdill, Deno, Millikan & Carter,* for respondent.

PEKELIS, J.—The City of Lynnwood appeals from a jury verdict in favor of William E. Grader, in which the jury found that the City's interpretation of a land use ordinance violated substantive due process and equal protection of the law, entitling Grader to $1.65 million in damages under 42 U.S.C. § 1983. The City's principal claim is that the trial court erred in failing to dismiss the § 1983 claims as a matter of law. It contends that Grader failed to introduce sufficient evidence to sustain either his equal protection or his due process § 1983 claims, or to prove that the alleged civil rights violations were the proximate cause of his damages.[1]

Grader cross–appeals from the trial court's denial of his request for attorney's fees and its dismissal of his state law negligence claims. We affirm in part, reverse in part and remand for entry of judgment in favor of the City.

In a prior related action, *Grader v. Lynnwood,* 45 Wn. App. 876, 728 P.2d 1057 (1986) (*Grader* I), this court affirmed the Superior Court's determination that the City of Lynnwood's interpretation of Lynnwood Municipal Code (LMC) 20.14.040 would violate Grader's right to equal protection.

On October 28, 1982, Grader applied to the City of Lynnwood for a conditional use permit to construct a billiard parlor/warehouse on property contiguous to previously developed property he also owned and which contained valid nonconforming uses. The planning commission approved the conditional use permit on December 9, 1982. The City Council approved the conditional use permit on January 10, 1983.

---

[1]The City further contends that the trial court's instructions on § 1983, proximate cause, and damages were erroneous in a number of respects.

Grader also needed to obtain a building permit before proceeding with construction. In order to do so, a developer must submit an application to the building department together with a number of plans and documents which then are distributed to the appropriate city departments for approval. The site plans covering parking and landscaping, for example, are reviewed by the planning department. The applicant is then advised either by notations on the plans or by letter of all necessary corrections. If these corrections are made, the building permit is approved.

Grader never submitted a building permit application. Instead, after the issuance of his conditional use permit, he commenced informal negotiations with the planning department with respect to preparation of a site plan for parking and landscaping. Grader testified that he was instructed by a building department official to proceed in this manner. In the course of submitting several plans and meeting with planning department officials, they informed Grader that he had to abate his nonconforming uses on the contiguous lots. He was told that the basis for this requirement was LMC 20.14.040, which provides that when improvements are allowed on a nonconforming "site" the previously lawful nonconforming uses on that "site" must be abated. The City attorney had previously, in connection with another matter before the planning department, interpreted "site" as used in the ordinance to include contiguous lots under one ownership, whether or not the uses thereon shared access and parking.

It was not disputed that the City's interpretation would require Grader to alter the size and location of a large sign he regarded as crucial to advertising the existing businesses, and to add parking spaces and landscaping to the existing developments. Grader advised the City that these requirements were unreasonable and would force him to break oral and written leases with several of the existing businesses that used the sign. He maintained that the relocation of the sign would cause increased advertising costs

and damage the profits of the businesses, both his own and those of his lessees. The planning department officials, in turn, asked for copies of the leases in order to determine whether the City could accommodate Grader's concerns. Grader testified that he decided it was not worth the bother to submit the written leases since he had already explained his oral leases to the City to no avail.

Furthermore, Grader did not apply for a variance. The City's variance ordinance contained provisions which authorized a relaxation of parking requirements under certain circumstances. The City had previously considered a relaxation of the sign code in a situation involving an existing lease. Grader testified no one ever advised him of the variance procedure. It appears from the record, however, that he did at least have a copy of the variance ordinance.

On numerous occasions, in person and by letter, Grader challenged city employees and officials about its interpretation, which he contended was unconstitutional. In spite of his disagreements with them, Grader testified that the employees in the planning department were always helpful and courteous, and that the members of the planning commission were enthusiastic about his project.

Finally, Grader asked the City's hearing examiner to determine whether the City's interpretation of LMC 20.14.040 was correct. The hearing examiner upheld the City's interpretation, and that ruling was affirmed by the City Council. Grader then appealed to the Superior Court, where he prevailed. This court affirmed the Superior Court on the interpretation of the ordinance on October 6, 1986. *Grader* I, 45 Wn. App. at 877.

During the pendency of the City's appeal to this court in that initial action (*Grader* I), Grader filed the instant damages action against the City. The trial in this action commenced on March 25, 1987. Grader sought damages from the City for mental anguish and for delays resulting both in loss of anticipated profits and increased construction costs.

He alleged due process and equal protection violations, constituting violations of 42 U.S.C. § 1983, as well as claims of negligence and tortious interference with business expectations. Grader also sought attorney's fees under 42 U.S.C. § 1988.

At trial Grader testified that he never obtained bids on the landscaping, sign relocation or parking striping improvements that would have abated the nonconforming conditions. He had an oral commitment for construction financing, but testified that he was unable to get financing since there was litigation concerning the project. He also testified that it was his business judgment that it would not be appropriate to proceed with the financing while *Grader I* was pending. He therefore did not pursue the project then or at any time, even following this court's favorable determination in *Grader* I.

The City made several motions for dismissal of all claims, each of which was denied, with the exception of the state law tort claims which the trial court dismissed on the grounds of quasi–judicial immunity and the public duty doctrine. On the § 1983 claims the jury returned a verdict of $1.65 million in favor of Grader. The trial court denied the City's motion for judgment notwithstanding the verdict or a new trial, and entered judgment on the verdict on June 5, 1987. Grader's posttrial motion for an award of attorney's fees was denied.

The City appeals from the verdict and Grader cross–appeals from the dismissal of the state tort claims and the denial of attorney's fees.

I

SUFFICIENCY OF EVIDENCE

The City argues first that Grader's § 1983 claims should have been dismissed because he failed to introduce sufficient evidence of (1) intentional or purposeful discrimination with regard to his equal protection claim or (2) arbitrary, unfair and unlawful conduct with regard to his

due process claim.[2] Grader responds that the City's misinterpretation of its ordinance, misrepresentation of the text of the ordinance to the hearing examiner, and persistence of the City in maintaining its position provide sufficient evidence to sustain his claims.

■ A sufficiency of the evidence challenge in the form of a motion for a directed verdict or a judgment notwithstanding the verdict admits the truth of the nonmoving party's evidence and all reasonable inferences which can be drawn therefrom. This court grants such motions only where it can be held as a matter of law that there is no competent evidence or inferences to be drawn therefrom which would sustain a jury verdict in favor of the nonmoving party. *Manzanares v. Playhouse Corp.*, 25 Wn. App. 905, 908, 611 P.2d 797 (1980); *see also Chapman v. Black*, 49 Wn. App. 94, 97, 741 P.2d 998, *review denied*, 109 Wn.2d 1005 (1987).

A cognizable claim for relief under 42 U.S.C. § 1983 must allege that (1) defendant acted under color of state law, and (2) defendant's conduct deprived the plaintiff of rights, privileges or immunities protected by the United States Constitution. *Brower v. Wells*, 103 Wn.2d 96, 104–05, 690 P.2d 1144 (1984). Since the second prong is at issue here, we look to the elements necessary to find that Grader's constitutional rights were violated.

■ To sustain an equal protection claim, one must show intentional or purposeful discrimination. *Snowden v. Hughes*, 321 U.S. 1, 8, 88 L. Ed. 497, 64 S. Ct. 397 (1944). The discriminatory purpose must be clearly shown since such a purpose cannot be presumed. *Snowden; Stastny v. Board of Trustees*, 32 Wn. App. 239, 251–52, 647 P.2d 496,

---

[2]The City also argues as a threshold matter that Grader's § 1983 claims should be dismissed because he failed to show a regulatory taking. We reject the City's premise that all § 1983 claims involving land use must show a regulatory taking. *See, e.g., Brower v. Wells*, 103 Wn.2d 96, 106–07, 690 P.2d 1144 (1984); *Shelton v. College Station*, 754 F.2d 1251, 1257 (5th Cir. 1985), *aff'd on rehearing*, 780 F.2d 475, *cert. denied*, 477 U.S. 905, 91 L. Ed. 2d 566, 106 S. Ct. 3276 (1986); *Altaire Builders, Inc. v. Horseheads*, 551 F. Supp. 1066, 1070 (W.D.N.Y. 1982).

*review denied,* 98 Wn.2d 1001 (1982), *cert. denied,* 460 U.S. 1071, 75 L. Ed. 2d 950, 103 S. Ct. 1528 (1983); *see also Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 265-66, 270, 50 L. Ed. 2d 450, 97 S. Ct. 555 (1977). Allegations of merely "wrongful" or "unlawful" conduct will not be sufficient; rather, a showing of purposeful discrimination or at least an allegation that the misdeeds were knowing or reckless is necessary to sustain a § 1983 action. *Harrison v. Brooks,* 446 F.2d 404, 407 (1st Cir. 1971); *Williams v. Patton,* 410 F. Supp. 1, 3 (E.D. Pa. 1976). Where official action purports to conform to the applicable law, "an erroneous or mistaken performance of the statutory duty . . . is not without more a denial of the equal protection of the laws." *Snowden,* 1 U.S. at 8.

Grader's equal protection claim fails in light of the fact that there is absolutely no evidence that the City intentionally singled him out for discriminatory treatment under its interpretation of this ordinance. Indeed, its interpretation was triggered by another property owner's query to the planning department, and was applied uniformly to Grader. Nor has Grader shown knowing or reckless misdeeds by the City. At most, the facts indicate that City officials interpreted the ordinance in a way which was ultimately adjudicated as improper. There is nothing in *Grader I* or in the facts of this case indicating that the City's interpretation was frivolous or malicious. This case is therefore distinguishable from those in which § 1983 plaintiffs have prevailed as a result of showing inconsistent treatment, personal animus or political motives. *See, e.g., Shelton v. College Station,* 754 F.2d 1251, 1254 (5th Cir. 1985) (seemingly arbitrary and inconsistent denials of parking variances), *cert. denied,* 477 U.S. 905, 91 L. Ed. 2d 566, 106 S. Ct. 3276 (1986); *Wilkerson v. Johnson,* 699 F.2d 325 (6th Cir. 1983) (intentional misapplication of state licensing law in denying occupational license); *Cordeco Dev. Corp. v. Vasquez,* 539 F.2d 256, 260 (1st Cir.) (political and personal motives shown in efforts to defeat sand extraction permits),

*cert. denied,* 429 U.S. 978, 50 L. Ed. 2d 586, 97 S. Ct. 488 (1976).

■ Grader's substantive due process claims similarly fail. To show a denial of substantive due process, the claimant must show conduct that is arbitrary and unreasonable. *Altaire Builders, Inc. v. Horseheads,* 551 F. Supp. 1066, 1069 (W.D.N.Y. 1982). The fact that the City was steadfast in its position and never sought an outside opinion does not demonstrate arbitrary or unreasonable conduct. Again, neither the facts nor the court's opinion in *Grader* I gives any indication that the City's position was substantially frivolous or ill intentioned.

Grader also alleges that the City supplied the hearing examiner with an adulterated version of LMC 20.14.040 that supported its interpretation. At best, it appears that the hearing examiner may have been shown a document which paraphrased the ordinance for the purpose of illustrating the City's interpretation of the language in question. This, in itself, is not sufficient to establish a due process claim. Our review of the record of the hearing demonstrates that the hearing examiner clearly realized his task was to resolve a dispute over the interpretation of the ordinance. It is inconceivable that the ordinance itself was not before him. At the very least, the record clearly shows that he reviewed a letter Grader submitted which accurately quoted the disputed portion of the ordinance.

■ The mere fact that the city attorney's legal interpretation of the statute was ultimately found to be erroneous also does not rise to the level of a due process deprivation. Injury caused by negligent conduct is not sufficient to establish a cause of action under § 1983. *Daniels v. Williams,* 474 U.S. 327, 330, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986).[3] Without more, the city attorney's act of interpreting the ordinance and the City's decision to abide by the

---

[3]Grader relies to the contrary on *Pembaur v. Cincinnati,* 475 U.S. 469, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986), wherein liability was imposed under 42 U.S.C. § 1983 as a result of a prosecutor's considered legal decision to command police

interpretation until this court disallowed it cannot even be characterized as negligent. Thus, Grader has not presented sufficient evidence to sustain either his equal protection or his due process § 1983 claim, and the trial court erred in denying the City's motion to dismiss.

Although our holding effectively terminates Grader's § 1983 claims, an alternative reason, discussed below, exists for dismissal of these claims.[4]

## II
### PROXIMATE CAUSE

The City contends that Grader failed to show that its interpretation of the ordinance was the cause in fact and legal cause of his damages due to delayed construction. It claims he could have applied for a building permit or variance, but instead exercised his own personal business judgment not to do so. It further argues that Grader's failure to supply to the City copies of the leases he alleged would prohibit him from abating his nonconforming uses prevented it from working toward an accommodation with him. On these grounds, the City again seeks dismissal of Grader's civil rights claims as a matter of law.

Grader asserts that the City proximately caused his damages when it knew of his objection to its interpretation and refused to reverse its position. He also contends that to seek a variance would have been futile since the City had already indicated its position. Moreover, he argues that he could not determine the size of building he could construct until the site plan was approved and therefore he could not get a construction loan.

---

officers to forcibly enter plaintiff's clinic in violation of the Fourth Amendment. We decline to extend the *Pembaur* holding to the facts presented here. Not only are the constitutional provisions at issue different, but it appears that *Pembaur* falls into that line of cases in which a single, unusually egregious incident is held to create § 1983 liability. *See Hontz v. State*, 105 Wn.2d 302, 313, 714 P.2d 1176 (1986) (citing *Martini v. Russell*, 582 F. Supp. 136 (C.D. Cal. 1984)).

[4]We do not, however, find it necessary to reach the issues the City raises relating to alleged instructional errors.

■ When all inferences from the evidence are incapable of reasonable doubt, a reviewing court can decide proximate cause as a matter of law. *See Bernethy v. Walt Failor's, Inc.,* 97 Wn.2d 929, 935, 653 P.2d 280 (1982). Proximate cause consists of two elements: cause in fact and legal causation. *Hartley v. State,* 103 Wn.2d 768, 777, 698 P.2d 77 (1985). Cause in fact refers to the "but for" consequences of an act, that is, the immediate connection between an act and an injury. *See King v. Seattle,* 84 Wn.2d 239, 249, 525 P.2d 228 (1974). Legal causation rests on policy considerations as to how far the consequences of defendant's act should extend. It involves a determination of whether liability should attach as a matter of law even if the proof establishes cause in fact. *Hartley,* 103 Wn.2d at 779; *King,* 84 Wn.2d at 250.

In *King v. Seattle, supra,* the Supreme Court refused to find that the City's denial of street use and building permits proximately resulted in the developers' damages for delayed construction. In that case the developers had voluntarily exercised their business judgment in declining to pursue all of their administrative remedies, and they had not attempted to avoid their damages. *King,* 84 Wn.2d at 250–51. Similarly, in *Hillis Homes, Inc. v. Snohomish Cy.,* 32 Wn. App. 279, 647 P.2d 43, *review denied,* 98 Wn.2d 1011 (1982), the court followed the proximate cause analysis of *King* and denied a developer consequential damages where the County failed to act within 90 days on an application for a preliminary plat, as required by statute. The court stated:

> The County's liability cannot be premised on the developer's independent business judgment that it would be more advantageous to informally work with the County rather than promptly pursuing its legal remedies once the 90 days had expired.

*Hillis,* 32 Wn. App. at 285. Similar results were reached in *Alger v. Mukilteo,* 107 Wn.2d 541, 730 P.2d 1333 (1987) and *Pleas v. Seattle,* 49 Wn. App. 825, 746 P.2d 823 (1987), *review granted,* 110 Wn.2d 1021 (1988).

 Here, Grader exercised his own business judgment in a number of respects which preclude a finding that the City's actions were the proximate cause of his damages. First, Grader decided that it would be preferable not to abate the nonconforming uses on his adjoining property because he wished to maintain a consistent relationship with the existing businesses. In addition, he independently decided not to produce the leases as requested, not to apply for a building permit, and not to seek a variance. Thus, the issue of proximate cause should not have gone to the jury, and Grader's civil rights claims should have been dismissed as a matter of law.

## III
### STATE LAW TORT CLAIMS

On cross appeal, Grader challenges the dismissal of his state law negligence claims, which the trial court rejected on the grounds of quasi–judicial immunity.[5] He asserts that the wrong against him was complete at the time of the planning department's disapproval of his site plan, which was an operational, not an executive, function. The City replies that Grader's hearings before the hearing examiner and the City Council constituted the actual decision and that those were quasi–judicial proceedings.

 The hearing examiner's proceedings and the City Council's proceedings were the City's final decisions with regard to the interpretation of LMC 20.14.040, and were clearly quasi–judicial in nature. That is, their work was "'functionally comparable to that of a judge'". *See Jensen v. Torr*, 44 Wn. App. 207, 213, 721 P.2d 992 (quoting *Rayburn v. Seattle*, 42 Wn. App. 163, 166, 709 P.2d 399 (1985), *review denied*, 105 Wn.2d 1007 (1986)), *review denied*, 107 Wn.2d 1004 (1986). Thus, the City could not be held liable

[5]Grader also appeals from the denial of his claim for attorney's fees under 42 U.S.C. § 1988. However, since he has not prevailed on his § 1983 claims, he cannot recover his attorney's fees.

in tort, and the trial court properly dismissed the state law tort claims.[6]

In sum, we reverse, dismissing Grader's claims under 42 U.S.C. § 1983, and affirm the trial court's dismissal of Grader's state law tort claims. Since the City has substantially prevailed on review, it may be awarded its costs on appeal. *See* RAP 14.2.

SCHOLFIELD, J., concurs.

WILLIAMS, J.*—I would reverse the judgment entered on the verdict because there is no evidence in the record of discrimination. I join in affirming the judgment of dismissal of the state law tort claims and the allowance to the City of its costs on appeal.

Reconsideration denied March 31, 1989.

Review denied at 113 Wn.2d 1001 (1989).

---

[6]We therefore do not reach the City's additional argument that it is immune from suit under the discretionary and public duty doctrines.

*Judge Ward Williams is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).