[No. 7144–1–I.   Division One.   October 27, 1980.]

TRI–M ERECTORS, INC., *Appellant,* v. DONALD M. DRAKE COMPANY, *Respondent.*

*Hackett, Beecher, Hart, Branom & Vavrichek* and *James M. Beecher,* for appellant.

*Karr, Tuttle, Koch, Campbell, Mawer & Morrow* and *Terence P. Lukens,* for respondent.

DORE, J.—Plaintiff, Tri–M Erectors, Inc., appeals from a trial court summary judgment in favor of defendant, Donald M. Drake Company. Drake cross–appeals from the trial court's failure to award Drake attorneys' fees, costs, and prejudgment interest.

## ISSUES

1. Whether the trial court correctly applied the indemnity clause in the Drake/Tri–M subcontract in granting Drake summary judgment for defense costs.

2. Whether the trial court erred in striking Tri–M's affirmative defense of res judicata or collateral estoppel by reason of prior arbitration and award.

3. Whether the trial court erred in refusing to grant Drake attorneys' fees, costs, and prejudgment interest.

## FACTS

Drake was the initial general contractor on the Kingdome Stadium project. Tri–M held the reinforcing steel subcontract with Drake. Part of the steelwork involved the erection of rebar towers which were held in place by a series of guy wires. After the guy wires were in place, Drake complained that some of them interfered with its drilling equipment. Drake instructed Tri–M to move certain guy wires. Tri–M protested that the proposed method of repositioning the guy wires was dangerous, but it went ahead

with the repositioning of such guy wires under Drake's direction. The anchor bolts to which the wires were to be attached were supplied by Drake and installed by Drake's employees into concrete blocks. A Tri–M employee, William Fenimore, was injured during the process when one of the anchor bolts failed.

Fenimore sued Drake for damages for his injuries. Drake tendered the defense of such lawsuit to Tri–M, which tender was refused. Subsequently Drake successfully defended the Fenimore suit.

Tri–M then commenced an action to recover sums which it contended were expended to replace and repair the towers that were damaged in the Fenimore accident. Drake counterclaimed to recover expenses incurred in its defense of the Fenimore suit. Drake's counterclaim was based primarily on the indemnification provision in the subcontract between Tri–M and Drake.

The trial court dismissed Tri–M's original cause of action and granted Drake's cross complaint. A jury subsequently fixed the amount of defense costs at $76,797.90. Tri–M has appealed from the liability holding against it because, prior to granting judgment to Drake on summary judgment, the trial court granted Drake's motion to strike Tri–M's affirmative defense.

The trial court also refused to grant Drake's summary judgment on its insurance cross complaint and Drake also cross–appeals on this issue.

### Decision

Issue 1: Indemnity provision applies.

█ In Fenimore v. Drake, King County cause No. 767915, the jury either found that Drake was not negligent, or if Drake was guilty of negligence, it was not the proximate cause of the injuries to Fenimore. This judgment permanently bars Fenimore from seeking damages of any kind from Drake arising out of his injuries on January 10, 1973. In addition, Fenimore is prohibited from bringing any action against the subcontractor Tri–M, for he is barred

from such action by the workers' compensation act. Consequently, this is not a case where the general contractor is seeking indemnification from the subcontractor for damages incurred as a result of an accident. Drake is suing for damages incurred as a result of being required to *defend* a personal injury action which Drake claims the subcontractor Tri–M was bound to defend under an indemnity agreement. In *Calkins v. Lorain Div. of Koehring Co.,* 26 Wn. App. 206, 211, 613 P.2d 143 (1980), it was stated:

> Washington courts have held that indemnity contracts should be given a reasonable construction and should not be "so narrowly or technically interpreted as to frustrate their obvious design," *Union Pac. R.R. v. Ross Transfer Co.,* 64 Wn.2d 486, 488, 392 P.2d 450 (1964), quoting from 27 Am. Jur. *Indemnity* § 13, at 462 (1940).

Tri–M and Drake attempted to allocate the risk of accidents which might occur in connection with the subcontract by means of an indemnity agreement. This clause in the subcontract reads as follows:

> 5. Subcontractor shall:
> (1) INDEMNITY. Indemnify and save contractor harmless from all claims, suits and actions (including costs, expenses and reasonable attorneys fees incurred by Contractor or others in defending the same) of any character, nature or description made or brought for or on account of any injury, death or damage (physical or otherwise) allegedly or actually received, suffered or sustained by any person, persons, firm, property, partnership or corporation, caused by or allegedly caused by or arising from any act or omission of Subcontractor, his suppliers, agents, subcontractor, and/or employees in or in any way connected with the performance of this Subcontract . . .

Tri–M argues that the indemnity provision does not apply to the facts before us. Fenimore's suit against Drake was based solely on the negligence of Drake. There was no allegation that Tri–M was at all involved with the accident. Because Fenimore never broadened his allegations to include any acts or omissions of its employer (Tri–M), Tri–M now argues that the indemnity agreement is not applicable. Tri–M relies *solely* on *Jones v. Strom Constr. Co.,* 84

Wn.2d 518, 527 P.2d 1115 (1974), to support this proposition.

In *Jones,* one of the subcontractor's employees was injured when the flooring upon which he was standing collapsed due to a lack of shoring beneath. The general contractor was responsible for adequate shoring of the floor. An indemnity clause in the *Jones* case at page 521 required that the subcontractor indemnify the general contractor

> from and against any and all suits, claims, actions, losses, costs, penalties, and damages, of whatsoever kind or nature, including attorney's fees, arising out of, in connection with, or incident to the SUBCONTRACTOR'S performance of this SUBCONTRACT.

The *Jones* court noted that:

> (a) clauses which purport to exculpate an indemnitee from liability for losses flowing solely from his own acts or omissions are not favored and are to be clearly drawn and strictly construed, with any doubts therein to be settled in favor of the indemnitor; (b) such clauses are to be viewed realistically, recognizing the intent of the parties to allocate as between them the cost or expense of the risk of losses or damages arising out of performance of the contract; and (c) causation of loss is the touchstone of liability under a construction contract indemnity clause, rather than negligence, although negligence may be incidental to the cause.

*Jones v. Strom Constr. Co., supra* at 520–21. The court held that indemnification does not arise unless the subcontractor's actions during its performance of the subcontract in some way caused or concurred in causing the loss. The fact of injury while the subcontractor was "inculpably performing its specified contractual obligations, standing alone, would not constitute a cause or participating cause." *Jones v. Strom Constr. Co., supra* at 522.

Drake argues that Tri–M's reliance on *Jones* is misplaced. We agree.

The indemnity clause at issue does not suffer from the infirmities of the indemnity clause in *Jones*. Indemnification from one's own negligence was at issue in *Jones*. The

terms of the Drake/Tri–M indemnity clause expressly require an act or omission by the subcontractor to have caused the incident from which the injury arose.[1]

The facts of the subject case also distinguish it from *Jones.* In *Jones,* the court noted that

> it was [general contractor's] performance or nonperformance of its contractual obligations which was the sole cause of the accident involved, . . .
>
> . . . Certainly, it could not have been the intent of the parties in executing a subcontract, which represented only approximately 1/20th of the overall contract price for the project, to constitute [subcontractor] an indemnitor of [general contractor] as against any and *all losses or damages occurring to [subcontractor] or its employees as a direct and sole result of [general contractor's], or another of its subcontractor's, negligence in the performance of duties not delegated to [subcontractor].*

(Italics ours.) *Jones v. Strom Constr. Co., supra* at 522.

In contrast to the facts in *Jones* are those in the subject case. Pursuant to the subcontract, Tri–M was to perform steel rebar work. Tri–M held the rebar towers in place with guy wires. The injury to Fenimore was caused by and occurred during the process of moving these guy wires. Tri–M conceded that Fenimore was engaged in work which "involved" the rebar cages and which "affected" their construction. The accident was thus "connected with the performance" of the subcontract, and fell within the language of the indemnity provision.

The trial court was correct in holding that the indemnity provision applied.[2]

---

[1]The pertinent part of the indemnity clause reads as follows: "Subcontractor shall . . . indemnify and save contractor harmless from all claims, suits and actions . . . of any character, nature or description made or brought for or on account of any injury, . . . suffered or sustained by any person, . . . *caused by or allegedly caused by or arising from any act or omission of Subcontractor. . . .*" (Italics ours.)

[2]We need not reach the issue as to whether RCW 4.24.115 is constitutional. That statute is inapplicable to this case because it bars enforcement of an indemnity provision which purports to

ISSUE 2: Trial court did not err in striking affirmative defense based on claim that subject matter of suit barred by arbitration award.

Fenimore sued the general contractor Drake during June 1973 for his injuries, alleging negligence. On July 13, 1973, Tri–M demanded arbitration from Drake on many items involved in the subcontract. When both parties moved for summary judgment in the subject case, one of the affirmative defenses of Tri–M was its contention that Fenimore's action was barred, because it had been disposed of by the arbitration award between Drake and Tri–M. The trial court had before it the following documentation concerning such arbitration.

1. Exhibit A, designated Construction Industry Arbitration Rules Demand for Arbitration.

2. Exhibit B, Request and Demand for Amplification and Bill of Particulars as to Claim and Demand for Arbitration directed to Tri–M by Drake.

3. Exhibit C, Tri–M's Answer to Request and Demand for Arbitration and Bill of Particulars as to Claim and Demand for Arbitration. [That said exhibit C contained the following language: "(b) Directions to change guying; furnishing an inadequate cinch anchor improperly placed in the corner of the footing for Column 32."]

4. Exhibit D, Award of Arbitrator in the amount of $73,046.60.

The arbitration documents establish that damages arising from moving the guy wires, which caused Fenimore's injuries, were included in the arbitration and presumably were resolved in the arbitration award. However, an examination of the above documents also clearly indicates that the arbitration agreement did *not* include the contract

indemnify against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the indemnitee . . .

Negligence is not at issue in the Drake/Tri–M subcontract indemnification clause. As discussed above, causation is the touchstone of indemnification, not negligence.

between the parties and in particular the indemnity provision in such contract. Had Fenimore secured a judgment against Drake for damages, he would not be entitled to be reimbursed from Tri–M in view of the fact that Tri–M had already previously arbitrated the subject matter on which his cause of action was based in the arbitration agreement. However, the subject lawsuit is not one for reimbursement of money damages for payment of a judgment for injuries of a subcontractor's employee. It involves only the issue of whether or not the indemnity agreement controlled as to the subcontractor's duty to defend lawsuits arising out of the subcontractor's work.

In the subject case, when Drake tendered the defense of Fenimore's lawsuit to Tri–M under the indemnity agreement, Tri–M refused to defend the same and Drake was required to hire its own attorneys at an expense of some $76,797.90, as set by the jury. The duty to defend a lawsuit and payment of a judgment as a result of litigation of such lawsuit are two separate obligations. The cause of action of Fenimore against Drake was involved in the arbitration agreement and was a bar to any claim by Drake for payment. However, the duty to *defend* a lawsuit based on such cause of action, even though it was arbitrated, was not released in the arbitration agreement. It was the obligation of Tri–M to defend such lawsuit under the indemnity agreement between the parties. The damages for not defending are the amount of Drake's attorneys' fees, which the jury set at $76,797.90.

We hold that the trial judge correctly struck Tri–M's affirmative defense based on arbitration, because the issue of the expenses incurred in defending lawsuits arising from activities of the subcontractor under the subcontract clearly was not included in the parties' arbitration award.

ISSUE 3: Court was correct in denying prejudgment interest, attorneys' fees and costs.

Drake contends the trial court erred in failing to award

prejudgment interest for attorneys' fees and costs, expert witness fees, etc., incurred in the suit with Fenimore. Drake also has appealed the trial court's denial of attorneys' fees incurred in the suit with Tri–M. We will discuss the two items separately.

### Fenimore v. Drake

Drake succeeded in defending itself from an attack by Fenimore. The jury verdict and judgment in favor of Drake was affirmed by the Washington Supreme Court, *Fenimore v. Donald M. Drake Constr. Co.,* 87 Wn.2d 85, 549 P.2d 483 (1976). Drake's costs and expenses, including attorneys' fees, incurred in the Fenimore suit were awarded to Drake by the trial court in the instant suit.

Drake now contends that it should have received prejudgment interest as to attorneys' fees and costs related to the Fenimore suit. Drake would have the interest accrue from the date Drake first tendered the Fenimore suit to Tri–M.

■ Prejudgment interest may be awarded

(1) when an amount claimed is liquidated, or (2) when the amount claimed is unliquidated and this amount is determinable by computation with reference to a fixed standard contained in the contract.

*Seattle v. Dyad Constr., Inc.,* 17 Wn. App. 501, 520, 565 P.2d 423 (1977). A claim is unliquidated if the principal must be arrived at by a determination of reasonableness. *Ski Acres Dev. Co. v. Douglas G. Gorman, Inc.,* 8 Wn. App. 775, 781, 508 P.2d 1381 (1973).

The question of reasonableness of the attorneys' fees expended by Drake was determined by the jury. Until that was resolved by the jury, the claim was unliquidated. This unliquidated claim did not fall within the "fixed standard" requirement as articulated in *Seattle v. Dyad Constr., Inc., supra.* Therefore prejudgment interest on attorneys' fees was properly denied by the trial court.

Tri–M v. Drake

The trial court ruled that as a matter of law the indemnity clause of the Drake/Tri–M subcontract applied to the facts before it. We have affirmed that holding. Drake now seeks reimbursement of its attorneys' fees and costs expended in that litigation, the sole purpose of which was to establish the applicability of the indemnity clause. It is through that clause that Drake now demands payment.

■ This issue was before the *Jones* court where the question was raised and disposed of as follows:

> [W]hether attorneys' fees attributable solely to litigation of the indemnity issue itself are recoverable. The general, and virtually unanimous rule appears to limit the allowance of such fees to the defense of the claim indemnified against and not to extend such allowance for services rendered in establishing the right to indemnification. 41 Am. Jur. 2d *Indemnity* § 36 (Supp. 1974); 42 C.J.S. *Indemnity* § 13d (1944). We hold, therefore, that, in the absence of express contractual terms to the contrary, an indemnitee may not recover legal fees incurred in establishing his right to indemnification.

*Jones v. Strom Constr. Co.,* 84 Wn.2d 518, 523, 527 P.2d 1115 (1974). The contract between Drake and Tri–M failed to expressly indemnify Drake for attorneys' fees and costs expended in an action to establish indemnification. Therefore the trial court did not err in refusing to award Drake attorneys' fees and costs incurred in the instant suit.

Affirmed.

JAMES, A.C.J., concurs.

ANDERSEN, J., concurs in the result.

Review denied by Supreme Court January 19, 1981.