68 Wn. App. 551 (1993)
844 P.2d 452
GEORGE HORN, ET AL, Respondents,
v.
GERALD J. MOBERG, ET AL, Appellants.
No. 28495-9-I.
The Court of Appeals of Washington, Division One.
February 1, 1993.
*553 John P. Erlick and Cozen & O'Connor, for appellants.
Mark A. Johnson, for respondents.
SCHOLFIELD, J.
Gerald Moberg and the law firm of Ries and Kenison (Ries & Kenison) appeal a judgment against them in a legal malpractice action brought by George and Alva Horn (the Horns). Moberg and Ries & Kenison also appeal denial of their motion for judgment notwithstanding the verdict and a new trial, and seek a reduction in the verdict by the amount of insurance proceeds received by the Horns. We reverse.

STATEMENT OF FACTS
In 1978, the Horns purchased a Maytag clothes dryer from Western Auto. An employee of Western Auto installed the dryer in the mobile home in which the Horns were living. Subsequently, Mr. Horn installed the dryer in a log house the Horns built and had recently moved into.
On March 17, 1982, a fire began in the utility room of the log house. When they discovered the fire, the Horns tried to telephone the fire department, but their telephone did not work. The fire department eventually arrived, but the fire destroyed the house. After an investigation, the fire marshal officially concluded that the cause of the fire was unknown. At the time, the Horns described their log home as being 95 percent complete. Korach & Canfield, the Horns' insurance broker, paid the Horns $66,000 under a construction materials policy for real and personal property losses.
In June 1982, the Horns retained Moberg. Moberg brought an unsuccessful action against Korach & Canfield for failure to provide sufficient insurance coverage. In December 1984, *554 Moberg filed suit against three parties: Maytag, the manufacturer; Furman, the distributor of the dryer; and Western Auto, the retailer. In May 1985, the defendants noted the depositions of the Horns' two expert witnesses, Lloyd Scott and Frank Roberts. During meetings shortly prior to their depositions, each expert informed Moberg he was unable to testify that the fire originated in the dryer. Roberts advised Moberg that "`no honest expert witness could say because of the conditions that this fire started in [the] dryer'". Moberg testified that he canceled both experts' depositions at that time because he believed it was in the Horns' best interest to do so.
After canceling the depositions, Moberg met in June 1985 with the Horns to discuss his doubts concerning the viability of their case. Moberg suggested the Horns seek other counsel to represent them. By letter dated July 22, 1985, Moberg notified the Horns that he intended to withdraw as their attorney and urged them to employ other counsel. By letter dated August 23, 1985, Moberg formally notified the Horns that he was no longer their attorney, stating in part:
This letter is to let you know that I am not your attorney in this case any more and I do not expect to do any further work on the case. I do not expect to attend any hearings or anything else. I suggest you find an attorney to represent you on this case immediately.
Exhibit 17. In the July 22 letter, he also provided the names of attorneys in Spokane who specialized in product liability actions and offered to cooperate with any substitute counsel the Horns might retain. On July 24, 1985, Mr. Horn picked up his entire file from Moberg's law firm, Ries & Kenison. Moberg filed and served a notice of intent to withdraw effective August 5, 1985.
The Horns met with Spokane attorney Dan McKelvey three times between July 25 and September 17, 1985, to discuss their product liability action against Maytag. McKelvey later became the Horns' cocounsel in the malpractice action against Moberg.
*555 The defendants in the Maytag action filed motions for summary judgment, to which Moberg did not respond, although Moberg sent copies of the defendants' summary judgment pleadings to the Horns. A hearing on the motions was held on September 19, 1985, which Moberg did not attend. The judge conditionally granted the summary judgment motions of Furman and Western Auto, giving the Horns until October 15 to provide opposing affidavits. As to Maytag, however, the judge concluded that the claims were not ripe for summary judgment. The summary judgment hearing concerning Maytag was continued until October 15.
By letter dated October 7, 1985, McKelvey informed the Horns that he would not represent them in place of Moberg. McKelvey stated that their case had been inadequately prepared against the named defendants and was "fatally flawed" because the telephone company and the fire department had not been named. Exhibit 270. On October 9, during a telephone conference call with the Horns and all parties, the trial judge permitted Moberg to withdraw as counsel for the Horns effective October 11, 1985. The court continued the summary judgment hearings and stated that it would grant additional time if the Horns needed it to secure new counsel.
Western Auto filed a motion for terms of $2,500 based on RCW 4.84.185, which provides for terms in respect to the filing of frivolous complaints. Defendant Furman filed a motion for terms of $300 based upon the Horns' failure to serve their objection to their counsel's withdrawal and failure to appear at the September 1985 summary judgment hearing. The court never awarded terms to Western Auto or Furman. Maytag never sought an award of terms, sanctions, attorney's fees, or costs against the Horns.
Mr. Horn testified that he made efforts to find another attorney to take his case. He said he was unsuccessful. In late October 1985, he consulted with attorney Edison Gimple, and after discussions with Mr. Gimple, chose to dismiss the Maytag litigation if Maytag would agree to not pursue *556 any claim for terms or sanctions against the Horns. On October 29, 1985, an order of dismissal with prejudice was signed by Judge Sperline, which dismissed the Horns' complaint against the Maytag company with prejudice and, in addition, provided
2. Plaintiffs shall not be required to make any payments to The Maytag Company for statutory attorney's fees or costs of any nature.
Exhibit 39. The order was presented by an attorney for the Maytag company and was approved for entry by Mr. Horn, appearing pro se.
On July 14, 1986, attorney Dan McKelvey and another attorney filed a professional negligence action against Moberg and Ries & Kenison (hereafter Moberg) on behalf of the Horns. Prior to trial, the court ruled that McKelvey's letter of October 7, 1985, to the Horns would be admitted with McKelvey's name blacked out, and that McKelvey could not be identified as the attorney with whom the Horns consulted after Moberg expressed an intent to withdraw. The trial judge stated the view that confusion of the jury, waste of time, and prejudice to the Horns outweighed the probative value of an identification of McKelvey. Moberg assigns error to this ruling.
During trial, after the court ruled that an expert called by the Horns on the value of their log house was not qualified to testify, the court allowed the Horns to substitute Kenneth Palmquist as an expert on value. The court permitted Moberg to interview Palmquist by telephone the evening before he testified.
At the close of the Horns' case, the court dismissed all claims arising out of Moberg's failure to name the fire department and the telephone company as defendants in the product liability action. The jury returned a special verdict in favor of the Horns on both the product liability claim and the malpractice claim, finding no comparative negligence on the part of the Horns, and awarding damages of $355,043.
Moberg's motions for judgment notwithstanding the verdict or, in the alternative, for a new trial were denied. The *557 court did not allow a setoff of the $66,000 in insurance proceeds received by the Horns. This appeal followed.

PROXIMATE CAUSE
The Horns pursued the theory at trial that Moberg was negligent in not properly preparing the Horns' case for trial. Expert testimony was presented to support this theory.
One of Moberg's primary defenses was that the dismissal of the case against Maytag was the result of the exercise of independent business judgment by the Horns. Moberg argues that even if he was negligent, his negligence was not the proximate cause of the loss of the Horns' case against Maytag. He argues that after he withdrew as attorney for the Horns, they had ample time to pursue Maytag through other counsel and that nothing he (Moberg) did or failed to do prevented the Horns from doing so.
The Horns countered the defense of voluntary exercise of business judgment by contending that the decision to dismiss Maytag was not voluntary, but was a result of the stressful situation the Horns were placed in by Moberg's negligence. The Horns also pursued the theory that, at best, the voluntary dismissal of Maytag by the Horns could only operate as an intervening cause between Moberg's negligence and the loss of the suit against Maytag. The trial court accepted this approach and instructed the jury that if the Horns' voluntary dismissal of Maytag was reasonably foreseeable by Moberg, then it was not an intervening cause, and Moberg's negligence, if any, was the proximate cause of the loss.
[1] Proximate cause consists of two elements: cause in fact and legal causation. Hartley v. State, 103 Wn.2d 768, 777, 698 P.2d 77 (1985). Cause in fact refers to the "but for" consequences of an act, that is, the immediate connection between an act and an injury. Legal causation rests on policy considerations determining how far the consequences of a defendant's act should extend. It involves the question of whether liability should attach as a matter of law, even if the proof establishes cause in fact. King v. Seattle, 84 Wn.2d 239, 250, 525 P.2d 228 (1974).
*558 [2] The law in Washington is that when a plaintiff by the exercise of independent business judgment elects not to pursue available legal remedies, the wrongful act of the defendant is not the proximate cause of the plaintiff's damages. King v. Seattle, supra; Hillis Homes, Inc. v. Snohomish Cy., 32 Wn. App. 279, 647 P.2d 43, review denied, 98 Wn.2d 1011 (1982); Grader v. Lynnwood, 53 Wn. App. 431, 767 P.2d 952, review denied, 113 Wn.2d 1001, cert. denied, 493 U.S. 894 (1989); Marsh v. Commonwealth Land Title Ins. Co., 57 Wn. App. 610, 789 P.2d 792, review denied, 115 Wn.2d 1025 (1990).
[3] The issue of proximate cause is reviewable on appeal as a question of law. King, at 250. The precise issue of whether the exercise of independent business judgment can defeat a claim of proximate cause was decided in King v. Seattle, supra. The court's conclusion that the plaintiff had failed to prove proximate cause is stated beginning at page 250 of the opinion:
There are two reasons why we cannot say, as a policy of law, that the City should be subject to legal liability for the plaintiffs' damages in this case. The plaintiffs made no effort to exhaust their federal administrative remedies nor did they attempt to avoid their damages, even though their real estate appraisers valued the property at $198,000 and the balance due on the real estate contract was approximately $106,000. The plaintiffs returned the property to the vendor rather than attempt to sell it.
The plaintiffs maintain that they elected not to apply for the federal permit and not to attempt a sale of their property because they no longer had the economic resources which in their judgment would have been necessary to adequately pursue these avenues. This was a voluntary business judgment.
Municipal liability for tortious interference with prospective economic advantage should not be premised on the independent unsubstantiated decision of a plaintiff that it would be unavailing to seek a possible administrative remedy accorded him under the law. If this were not so, the plaintiff would be able to create liability in another by his own independent judgment. We therefore find no legal liability (proximate cause) in the City for the plaintiffs' damages here.
After pointing out that another applicant similarly situated had been able to obtain relief from the Army Corps of *559 Engineers regulations of which King was complaining, the King court stated at page 252:
We do not believe it would be wise judicial policy to allow one party to create legal liability in another by a voluntary exercise of the complaining party's own personal business judgment not to seek to protect his rights in the legal forums provided him. This is especially so where, if the complaining party had exercised his legal rights in the first place, there may well have been no damage to his interests at all.
The foregoing reasoning from King v. Seattle, supra, provided the basis for the appellate decisions in Hillis Homes, Inc. v. Snohomish Cy., supra, Grader v. Lynnwood, supra, and Marsh v. Commonwealth Land Title Ins. Co., supra, in all of which the Supreme Court denied review.
[4] The Horns' decision to dismiss their claim against Maytag was clearly an exercise of independent business judgment. Mr. Horn testified he was concerned about the possibility that the defendants might obtain an award of attorney's fees against them on the ground that their lawsuit was frivolous. This consideration of possible financial repercussions does not prevent the Horns' dismissal of Maytag from being intentional and voluntary.
Our holding is similar to the holding in King that the Kings' failure to pursue legal remedies was voluntary, despite testimony that the Kings "no longer had the economic resources which in their judgment would have been necessary to adequately pursue these avenues." King, at 251. Concern over the expenses of litigation can cause many litigants to reconsider pursuing legal action, but the decision to withdraw is still an exercise of independent business judgment. In this respect, it should be noted that Maytag did not at any time assert a claim for attorney's fees or other sanctions against the Horns. Two other defendants did make claims for sanctions, but in modest amounts, and no sanctions were ever, in fact, awarded.
The jury verdict finding that Maytag sold a defective product is evidence that the Horns may well have prevailed had they pursued their case against Maytag through other counsel.
*560 [5] The fact that Moberg expressed doubts as to the merits of the Horns' claim against Maytag cannot be a basis for claiming that the Horns' dismissal of Maytag was not voluntary. An attorney losing confidence in a client or the merits of his case is not unusual, and withdrawal of the attorney from the representation often follows such a development. When Moberg withdrew with court approval on October 11, the parties were not faced with an imminent trial date. The trial court had assured the Horns that if they needed it, an extension of time would be granted so they could employ another attorney. There was ample opportunity to prepare the case against Maytag. Nevertheless, the Horns elected to dismiss the case. If they were influenced by attorney McKelvey's opinion that the case was "fatally flawed" (exhibit 270) because Moberg had not joined the telephone company or the fire department as defendants, that is unfortunate. However, the trial court held as a matter of law that Moberg was not negligent for failing to join those two defendants. Attorney McKelvey's statement was in error. However, it was not an error that can be attributed to Moberg. Moberg never advised the Horns to dismiss the Maytag case, but to the contrary, urged them to find another attorney and pledged his cooperation with substitute counsel.
[6] The jury's verdict finding Moberg negligent and that his negligence was a proximate cause of the Horns' damages must be reversed. At most, the verdict amounts to a finding that Moberg's negligence was a cause in fact of the Horns' damages, but does not address the basis on which we decide this case, which is that the element of legal causation is lacking. Under these circumstances, it is unnecessary to address the validity of the jury's findings or the jury instructions.

EXCLUSION OF IDENTITY OF ATTORNEY CONSULTED BY THE HORNS
[7] Determination of relevancy is a matter of trial court discretion and is reversible only upon a showing of an abuse *561 of discretion. Crescent Harbor Water Co. v. Lyseng, 51 Wn. App. 337, 344, 753 P.2d 555 (1988).
Moberg notified the Horns by letter dated July 22, 1985, of his intention to withdraw as their attorney. On July 24, Mr. Horn took his entire file from Moberg's law office and never returned it. Moberg served and filed his notice of intent to withdraw effective August 5, 1985. The Horns met three times with attorney McKelvey between July 25 and September 17, 1985. The hearing on the defendant's motion for summary judgment was on September 19, 1985. On October 7, 1985, attorney McKelvey informed the Horns he would not represent them in the case against Maytag.
On July 14, 1986, after the Horns had voluntarily dismissed their suit against Maytag, McKelvey and another attorney filed this case seeking damages from Moberg for professional negligence.
The trial court ruled that McKelvey's letter of October 7, 1985, would be admitted with McKelvey's name blacked out, and also ruled that McKelvey's name could not be identified to the jury at any time as the attorney with whom the Horns consulted after Moberg made known his intention to withdraw. The trial court's reasons for this ruling were stated as confusion of the jury, waste of time, and prejudice to the Horns, outweighing the probative value of having McKelvey identified.
The basis for the damages claimed in the malpractice suit was that the Horns had a viable cause of action against Maytag which was lost through Moberg's negligence. McKelvey was conferring regularly with the Horns during the critical time when the Horns decided to dismiss their suit against Maytag.
Central to the trial of the malpractice case was the issue of whether the Horns' dismissal of Maytag was a voluntary exercise of independent business judgment. With McKelvey never identified as the Spokane lawyer with whom the Horns had at least three conferences between July 25 and September 17, 1985, the jury never had the opportunity to *562 weigh McKelvey's role in the Horns' decision to drop the suit. During this critical period, the Horns claimed they were trying to find other counsel. Based in part on what McKelvey told them, the Horns concluded they had no choice but to dismiss the action against Maytag.
The alleged inability to find other counsel is inconsistent with the Horns' success in the malpractice case in convincing the jury that Maytag sold them a defective product which caused the fire which destroyed their home.
What information the Horns received prior to dismissing Maytag bears directly on the validity of their claim that Moberg's negligence left them in a position where they had no choice but to dismiss. Did the possibility of a suit against Moberg influence in any way the Horns' decision to dismiss Maytag? The identity of McKelvey as the Spokane lawyer discussing the case with them would have given the jury evidence which could well have influenced its verdict in the malpractice action. McKelvey's identification under these circumstances was relevant. We fail to see how making McKelvey's identity known to the jury would have wasted time or been confusing to the jury.
Had McKelvey's identification been disclosed, Moberg could have called him as a witness and interrogated on matters bearing on the issue of the voluntary exercise of business judgment by the Horns, as well as facts bearing on the issue of Moberg's alleged negligence.
The trial court erred in withholding McKelvey's identity from the jury, and we find no basis for saying the error was harmless.
The Horns argue that Moberg waived his right to call McKelvey as a witness and sought only to have McKelvey identified. The record reflects a statement by Moberg to the court outside the presence of the jury that "[o]ur position is that we do not still intend to call Mr. McKelvey."
This statement was made, however, after the court had made an earlier ruling that McKelvey would not be identified to the jury, and the court and the Horns' counsel were discussing the possibility of a mistrial if the trial court's *563 ruling on the identity issue should be reversed. In that light, the statement was not one that would necessarily preclude calling McKelvey as a witness should the court reverse its earlier ruling and allow McKelvey to be identified to the jury. In fact, under such changed circumstances, McKelvey may have been forced to testify in any event. We do not consider Moberg's statement to be a binding waiver of his right to call McKelvey as a witness.

THE COLLATERAL SOURCE RULE
The trial court ruled that $66,000 received by the Horns from a construction materials policy of fire insurance purchased by them was a payment from a collateral source which would not be deducted from the jury award to the Horns in the legal malpractice action. Moberg assigns error to this ruling. The ruling, however, was correct and will be sustained.
With the possible exception of RCW 7.70.080, pertaining to medical malpractice cases, the State of Washington excludes benefits received by an injured party from a source which is independent of the tortfeasor. As stated in Stone v. Seattle, 64 Wn.2d 166, 172, 391 P.2d 179 (1964):
It is well established that the fact a plaintiff receives, from a collateral source, payments of this nature which have a tendency to mitigate the consequences of the injury that he otherwise would have suffered, may not be taken into consideration when assessing the damages the defendant must pay.
Ciminski v. SCI Corp., 90 Wn.2d 802, 804, 585 P.2d 1182 (1978) states:
Under the collateral source rule, payments, the origin of which is independent of the tort-feasor, received by a plaintiff because of injuries will not be considered to reduce the damages otherwise recoverable.
[8] Benefits from insurance coverage purchased by the injured party are excluded pursuant to the collateral source rule. Consolidated Freightways v. Moore, 38 Wn.2d 427, 229 P.2d 882 (1951).
The $66,000 received by the Horns was from an insurance policy which they purchased with their own funds. It thus *564 qualifies as a source completely independent of the tortfeasor, whether we consider the tortfeasor to be Maytag or Moberg. The trial court's ruling was correct.

OTHER ASSIGNMENTS OF ERROR
Moberg has assigned as error the trial court's failure to grant a motion for a judgment notwithstanding the verdict based upon the Horns' failure to prove the necessary elements of a products liability claim against Maytag. However, our disposition of this case on other grounds makes it unnecessary to address this issue, as well as the issue involving the substitute witness on the value of the home.
The record in this case fails to establish legal causation between the alleged negligence of Moberg and the damages sustained by the Horns. It follows that proximate cause has not been established as a matter of law. This case is remanded to the trial court for entry of a judgment of dismissal of the Horns' complaint.
GROSSE and FORREST, JJ., concur.
Review denied at 121 Wn.2d 1025 (1993).